IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ABC IP, LLC, a Delaware limited liability
Company, and RARE BREED TRIGGERS,
INC., a Texas corporation
     Plaintiff,

v.

JESSE T. KLINE,
     Defendant.



SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

**OCT 1 4 2025**

ARTHUR JOHNSTON
BY_____ DEPUTY

Civil Action No. 3:25-cv-00454-CWR-ASH

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S SPECIAL APPEARANCE MOTION TO DISMISS UNDER RULES 12(b)(2), 12(b)(4) AND 12(b)(5)

### I. Introduction

Defendant Jesse T. Kline, appearing specially and not generally, respectfully submits this memorandum in support of dismissal under Rules 12(b)(2), 12b(4), and 12(b)(5). The Court lacks personal jurisdiction because Defendant has no relevant contacts with Mississippi, and the only alleged act occurred in Utah before the asserted patent issued. The plaintiff's process is insufficient and has failed to properly serve the defendant. These defects require dismissal.

### II. Statement of Facts

1. **Defendant's Residence, Lack of Mississippi Contacts, and Alleged Conduct Occurred in Utah Before Patent Issuance.**

On June 23, 2025, Plaintiffs filed a complaint in the Southern District of Mississippi, Northern Division, alleging that the Defendant had committed patent infringement. The Defendant is domiciled in Utah, maintains a Utah driver's license, Utah voter registration, Utah vehicle registration, Utah Resident Concealed Firearms License, and is not domiciled in Mississippi. (See Exhibit 3-5) He has no individual contact with Mississippi and has not purposefully directed any activity toward this forum. Plaintiff's claim relies on a single

1

photograph of a May 2, 2024, Facebook post, created and posted while Defendant was at his residence in Utah. The '247 patent at issue had no enforceable term until July 16, 2024. (See Exhibit 1-2; Plt. Compl. 5:22, Patent '247 USPTO Grant.) The alleged act occurred in another state and before any patent rights existed. The defendant's alleged conduct was not purposefully directed toward Mississippi, and the present action cannot arise from or relate to out-of-state activities that, as a matter of law, are incapable of constituting infringement.

2. **Attempted Improper Service, Process, and Process-Server Misconduct.**

On June 29, 2025, Plaintiff's process server attempted service at Defendant's private land while the property was unoccupied. (See Exhibit 6) Communication occurred only through a remote intercom system, during which the individual failed to identify himself or the purpose of his visit. Only after the purported return of service was filed on September 21, 2025, did it become apparent that this person was acting as Plaintiff's process server. (Exhibit 10) During that attempt, the individual became visibly agitated, made unsolicited remarks about a vehicle registered to Defendant's family member, and was instructed via intercom to leave the premises as he was trespassing on private land. Before departing, the individual made a threatening remark indicating that he would return.

Despite that express trespass warning, the same individual unlawfully re-entered the property on July 6, 2025, at approximately 23:20 hours, under the cover of darkness. Security footage confirms that he entered the curtilage of the home and affixed a GPS tracking device to the right side rear wheel well of a vehicle owned by Defendant's family member without consent. (See Exhibit 7.1-7.3) The Pearl Police Department responded, recovered the device, and confirmed its unlawful placement. (See Exhibit 8.1-8.3) The incident is part of an ongoing police investigation.

2

On September 21, 2025, the same individual entered the property, despite his prior exclusion and his previous unlawful activity. The residence was unoccupied at the time. The individual did not identify himself as a process server, nor did he announce that he was serving a summons or complaint. Instead, he stated only that he was leaving "papers," which he placed on an exterior step and immediately departed. (See Exhibit 9.1-9.2) Security camera footage verifies that no one accepted or was personally served and that the individual's actions were limited to leaving "papers" outside an unoccupied home.

The conduct of Plaintiff's process server, repeated trespass, nighttime entry, and unlawful placement of a GPS tracking device, reflects a pattern of bad faith and improper process and service inconsistent with Rules 4, and the principles of due process.

## Legal Standard

### A. Personal Jurisdiction

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of proof is on the plaintiff as the party seeking to invoke the district court's jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "[T]he party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985). Furthermore, "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.* at 546. "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: (1) whether a forum state's long arm statute permits service of process and (2) whether the assertion of personal jurisdiction violates due process." *Athletic Training*

3

*Innovation, LLC. v. eTagz, Inc.* 955F.Supp.2d 602 (E.D. La. 2013). Because Mississippi's long-arm statute provides, in pertinent part that:[a]ny nonresident person ... who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. *Dunn v. Yager*, 58 So.3d 1171 (2011).

The exercise of "[p]ersonal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.' " *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). When a nonresident defendant "purposefully avail[s] [it]self of the benefits of the forum state, so that [it] 'should reasonably anticipate being haled into court' there," the defendant's conduct establishes minimum contacts. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction." *Clemens v. McNamee*, 615 F.3d at 378. (5th Cir. 2010)

General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796

4

(2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S.Ct. 154). "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378. Under 35 U.S.C. § 154, a patent becomes enforceable on the date it is issued by the United States Patent and Trademark Office (USPTO) and grants the patentee the exclusive right to exclude others from making, using, offering for sale, or selling the invention throughout the United States during the term of the patent. During the enforcement term of the patent, the patentee may enforce their rights through civil action for infringement. 35 U.S.C. § 271. "Patent infringement occurs whenever one 'without authority makes, uses or sells any patented invention within the United States during the term of the patent therefor." See *Seven Networks, LLC v. Google*, 315 F.Supp.3d 933 at 942 (2018).

## B. Service of Process and Insufficient Process

The defendant may move to dismiss for insufficient service of process under Fed. R. Civ. P. Rule 12(b)5. In order to avoid dismissal, the plaintiff must make a prima face showing of proper service. *Arigna Tech. LTD. V. BMW*, 607 F.Supp.3d 635 (5th Cir. 2023). Once the validity of service of process has been contested, the serving party bears the burden of establishing the propriety of service. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). The burden of proof to establish proper service is on the party on whose behalf service is made. *Trans Chem. Ltd. v. China Nat. Machinery Import and Export Corp.*, 161 F.3d 314 (5th Cir. 1998). Under Rule 4(e)(1) of the Federal Rules of Civil Procedure, which governs service on individuals, it provides: (e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual other than a minor, an incompetent person, or a person whose waiver has been filed may be served in a judicial district of the United

States by: "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.." Fed. R. Civ. P. 4(e)(1).

Under the Mississippi Rules of Civil Procedure, Rule 4(d) provides a similar manner: "Summons and Complaint: Person to Be Served. The summons and complaint shall be served together. Service by sheriff or process server shall be made as follows: (1) Upon an individual other than an unmarried infant or a mentally incompetent person, (A) by delivering a copy of the summons and of the complaint to him personally or to an agent authorized by appointment or by law to receive service of process; or (B) if service under subparagraph (1)(A) of this subdivision cannot be made with reasonable diligence, by leaving a copy of the summons and complaint at the defendant's usual place of abode with the defendant's spouse or some other person of the defendant's family above the age of sixteen years who is willing to receive service, and by thereafter mailing a copy of the summons and complaint (by first class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left..." Miss. R. Civ. P. Rule 4(d). Permitting such a transformation would violate the clear language of the Rule and unfairly prejudice the defendant without notice of the necessity to respond. See, *Carimi,* 959 F.2d 1334 at 1348. Actual knowledge of a lawsuit by a defendant is insufficient to confer jurisdiction. *Maschinenfabrik Reinhausen GmbH v. Shanghai Huaming Power Equip.* Co., No. 3:06-CV-0897-L, 2007 WL 9711692 (N.D. Tex. Mar. 31, 2007).

Rule 12(b)(4) allows a defendant to move for dismissal based on insufficient process. *See* Fed.R.Civ.P. 12(b)(4). In turn, Rule 4(b) provides that on or after filing the complaint, "the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed,[4] the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." Fed.R.Civ.P. 4(b). A summons, or a copy of a summons if addressed to multiple defendants, "must be issued for *each defendant* to be served." Fed.R.Civ.P. 4(b) (emphasis added). The plaintiff bears the burden of proof regarding sufficiency of the process. *Lechner v. Citimortgage, Inc.,* 4:09–CV–302–Y, 2009 WL 2356142, at *1 (N.D.Tex. July 29, 2009); *see also* Fed.R.Civ.P. 4(c); *Coleman v. Bank of New York Mellon,* 969 F.Supp.2d (N.D. Tex. 2013).

### III. Argument

### A. The Court Lacks Personal Jurisdiction Over Defendant (Rule 12(b)(2))

### 1. Mississippi's Long Arm Statute Cannot Attach as a Matter of Law.

Plaintiffs cannot invoke Mississippi's long-arm statute because the only alleged conduct, a pre-issuance Facebook post made from Utah, occurred entirely outside Mississippi and cannot, as a matter of law, constitute patent infringement. MS long-arm statute, Miss. Code Ann. § 13-3-57, allows courts to exercise jurisdiction over a non-resident who (1) makes a contract in whole or in part in MS, (2) commits a tort in whole or in part in MS, or (3) does business in MS. *Dunn,* 58 So.3d 1171 (2011). The Mississippi long-arm statute is not coextensive with federal due process, requiring an analysis of the scope of the reach of the statute itself. *Allred v. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir. 1997). Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi. *Id.* at ¶¶ 7,8. As the Mississippi Supreme Court has observed consistently:

"The tort is not complete until the injury occurs, and if the injury occurs in this State then, under the ... statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court." *Id.*

Here, none of the statute's three prongs is satisfied. No contract was made or performed in MS. No tortious act occurred "in whole or in part" in MS: the sole factual allegation is a May 2, 2024, Facebook post expressly limited to May 2024, made while the Defendant was located at his residence in UT, months before the '247 patent issued on July 16, 2024. Because patent rights arise only "during the term of the patent." 35 U.S.C § 271(a). Pre-issuance conduct cannot constitute infringement as a matter of law. Accordingly, plaintiffs allege no act done or consummated in MS capable of giving rise to a cause of action. Finally, the alleged activity was an isolated, out-of-state social media post, not a continuous course of in-state commerce. Because MS long-arm statute extends to the limits of due process, the dispositive inquiry is whether exercising jurisdiction here would comport with constitutional due process. That analysis is set forth below.

### 2. General Jurisdiction Is Absent Because Defendant's Isolated, Pre-Issuance Utah Conduct and Secondary Property Ownership Do Not Make Him "At Home" in Mississippi.

The court lacks general personal jurisdiction because the Defendant's individual affiliations with Mississippi are neither continuous nor systematic and do not render him "essentially at home" in the forum. For example, a court may exercise general jurisdiction over a nonresident defendant only when its affiliation with the forum state is so continuous and systematic as to render it essentially at home in the forum. *Georgiou v. Battery Junction Corp.* 646 F.Supp.3d 781-88 at ¶ 7-8. General jurisdiction exists when a defendant's contact with the forum state is substantial, continuous, and systematic, even though the cause of action did not arise from those contacts. *Lloyd's Syndicate 457 v. American Global Maritime,* 346 F.Supp.3d

908-10. Due process requires a plaintiff seeking to exercise general personal jurisdiction over a nonresident defendant to demonstrate a contact of a more extensive quality and nature between the forum state than those needed to support specific jurisdiction. *Id.* at 910. This is a demanding standard; even extensive business activity in a forum state, such as sales and advertising, does not render a defendant at home there unless the activity is so substantial as to approximate physical presence. See, *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *Daimler AG v. Bauman*, 571 U.S. 117 (2014); and *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

General personal jurisdiction requires a defendant to be essentially at home in the forum, typically its place of domicile. *Final Expense Direct v. Python Leads, LLC,* 689 F.Supp. 3d 430 (S.D. Tex. 2023). In *Final Expense*, Jacquelyn Levin and David Levin had both been longtime Florida residents. *Id.* at 435. Plaintiff's list of Texas-related activities, such as licensing, generating Texas leads, soliciting business, contracting, and payments. *Id* at 436. In *Final Expense*, contracts such as these are not sufficient to show a foreign defendant is "at home" in Texas. The court held that the Levins, both Florida residents, were not subject to general personal jurisdiction in Texas. The court reasoned that general jurisdiction over individuals exists only in the state of domicile, and the record established that the Levins were both residents of Florida, and there was no showing of substantial, continuous, and systematic contacts in Texas. *Id.*

General jurisdiction demands that a defendant's affiliations with the forum be so continuous and systematic as to render it "essentially at home" there, a threshold unmet where the defendant's limited activity and lack of physical presence fall short of the circumstances required. *NavSav Holding, LLC V. Beber,* 724 F.Supp.3d 615, 624-625 (E.D. Tex. 2024). In *NavSav*, Unico is a Nebraska corporation, and its headquarters are located in Nebraska. *Id.* at

625. NavSav contended that this is one of those exceptional cases, and the court should find general jurisdiction over Unico because Unico maintains a registered agent in Texas and has customers and sells policies in Texas to Texas customers. *Id.* The court in *NavSav* found that these facts did not approach the threshold for continuous and systematic operations. *Id.* The court held that the directed activity of Unico's business dealings in Texas is inadequate to establish general jurisdiction. *Id.* The court emphasized that Unico had no substantial footprint in Texas, showing a complete absence of operational presence, confirming that Unico could not be "at home" there. *Id.*

The same logic in *Final Expense* applies here. The Defendant, like the Levins, is domiciled outside the forum in UT, where he holds his UT driver's license, UT vehicle registration, UT voter registration, and UT resident concealed firearms license. His sole connection with MS is his ownership of secondary real estate that does not alter his domicile or create the "exceptional case" of being at home in the state. The only alleged act was a May 2, 2024, social media post made while the defendant was at his residence in UT, months before the '247 patent was issued and enforceable on July 16, 2024. The activity occurred wholly outside Mississippi, as it bears no continuous or systematic connection to the forum. If the *Final Expense* defendant failed to satisfy the general jurisdiction threshold, an isolated, out-of-state, pre-issuance post cannot do so here. As in *Final Expense*, exercising general jurisdiction here would expand due process beyond constitutional limits.

In *NavSav*, the court refused to exercise jurisdiction over Unico, a Nebraska corporation, even though it had a registered agent in Texas and ongoing commercial sales to Texas customers. Even though Unico purposefully conducted business within the forum, the court held that those contacts were too limited to make it "at home" in Texas or to satisfy due process. By contrast, in

this case, the defendants' alleged connection to MS is far more attenuated. The defendant did not direct activity towards the state. The only conduct alleged was a single pre-issuance Facebook post made at the defendant's residence in Utah. It was passive in nature, was visible to a small private group, and had no connection to Mississippi residents or markets. Unlike Unico, which at least sought out customers in Texas, the Defendant's conduct was neither targeted nor affected anyone in Mississippi, nor did it create any ongoing relationships in the forum. If a corporation with continuing Texas business could not be haled into court there, then exercising jurisdiction over an out-of-state individual for one isolated, passive, pre-issuance post would offend the very "fair play and substantial justice that *NavSav* and *Diamler* protected.

The jurisdictional facts here closely parallel those in *Lloyd's,* where the court declined to exercise general jurisdiction over foreign companies alleged to have tangential contact with the forum through a local affiliate. The *Lloyd's* court emphasized that general jurisdiction required "continuous and systematic contacts" of an "extensive quality and nature," and that such a showing "is a difficult one to meet." The plaintiffs in *Loyd's* asserted that the foreign defendant sent representatives to the forum subsidiary, but the court found these limited activities insufficient because they lacked evidence of "the extent, duration, or frequency of contacts. The same reasoning applies here. Like the *Lloyd's* defendants, Kline's connection to the forum is limited and incidental. Although he owns real estate in MS, he is domiciled in UT, maintains a driver's license, voter registration in UT, and pays vehicle taxes in UT. The only alleged act, a single May 2, 2024, social media post, occurred while he was at his residence in UT, months before the asserted patent was issued, and bears no relationship to Mississippi. These facts, like those in *Lloyd's,* demonstrate at most sporadic or passive connections, not the "systematic and continuous" presence required to render a defendant "at home." If a multinational corporation with periodic Texas

activity failed to satisfy that demanding standard in *Lloyd's*, then an individual's incidental property ownership and out-of-state post cannot plausibly meet the test here. As in *Loyd's*, exercising general jurisdiction under these facts would stretch due process beyond its constitutional limits.

Defendant owns real property located in MS; however, that ownership is purely incidental and does not reflect residence, domicile, or continuous operations. Defendant does not maintain it as a principal place of living. Ownership of property alone does not render a defendant "at home" in a forum for purposes of general jurisdiction. Therefore, the court lacks general personal jurisdiction over the defendant.

### 2. Specific Personal Jurisdiction Is Absent Because the Only Alleged Conduct Predates the Patent's Issuance, occurred in Utah, and Bears No Forum-Related Nexus to Mississippi.

The court lacks specific jurisdiction because the Defendant has not purposely directed any conduct toward MS, and Plaintiffs' claims do not arise out of or relate to any MS-based activity. The exercise of specific personal jurisdiction over a nonresident defendant is a manner consistent with due process that requires a "sufficient nexus" between the nonresident defendant's contacts with the forum and at least one of the causes of action. 346 F.Supp.3d 908-10. "Personal jurisdiction comports with due process when first, the defendant has the requisite minimum contact with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on traditional notions of fair play and substantial justice." *Id.* "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum and litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984)). The Fifth Circuit established a three-part test for specific jurisdiction considering: (1) whether the defendant has minimum contacts with the forum, (2)

whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contact, and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Id.*

No specific personal jurisdiction exists as the defendants had limited contacts with the forum state. In *Final Expense*, the individuals' only claimed ties were having a Texas insurance license and accepting payments to their Florida business. *Id.* at 437-38. The Texas Plaintiffs argued that because the defendants worked with Texas-based clients, they should face suit there. *Id.* The plaintiff alleged that the Florida defendants did business with Texas and made calls to Texas residents. *Id.* The court held that specific personal jurisdiction did not exist over the defendants; the plaintiffs failed to allege sufficient facts to subject the defendants to specific personal jurisdiction in Texas. *Id.* at 437. The court found that any calls made to Texas residents do not arise out of or relate to the plaintiff's breach of contract case. The court further explained that none of the defendants "purposely directed" activities toward Texas in a way that justified being haled into court there. *Id.* The Levins were Florida residents, even though they held Texas insurance licenses and accepted payments; it was not clear from the record that any of these activities occurred in Texas. *Id.* The court implicitly recognized that forcing Florida defendants to litigate in Texas, without meaningful forum ties or case-specific connections, would violate due process principles of fair play and substantial justice.

Specific personal jurisdiction exists only when the defendant's forum-related conduct gives rise to the alleged harm. 646 F.Supp.3d. 781 (N.D. Tex. 2022). In *Georgiou*, the Connecticut defendants operated an online store with no physical storefront. *Id.* at 787. The website allowed for the placement of online orders, and the transaction resulted in at least one sale of a battery to a Texas resident, the plaintiff. *Id.* at 789. In *Georgiou,* the Plaintiffs presented evidence that Defendants generated thousands of dollars of revenue through their sales of

batteries from and within the State of Texas. *Id.* The site is "at least moderately interactive, so the defendant's website likely falls along the middle zone of the *Zippo* spectrum. *Id.* at 789. Because the site enables Texans "to pay for and purchase a product directly" and have it shipped directly to their Texas residence, the court assessed purposeful targeting. *Id.* at 790. Plaintiffs purchased the batteries online, used them in Texas, and the battery exploded in Texas, causing injury. *Id* at 792. The court held that the plaintiff has established (1) minimum contacts with Texas; (2) the claim arises from or is related to Defendants' contacts with Texas; and (3) Defendants cannot show it would be unfair or unreasonable to hale them into court. The court reasoned that the defendant's website is sufficiently interactive to establish it has purposefully availed itself of the privileges of conducting activities in Texas. *Id.* at 790. Mere foreseeability or awareness that the product reaches Texas is a constitutionally sufficient basis, if still in the stream of commerce when entering Texas. Further, the seller deliberately held itself out as willing to sell, accepted customers from Texas, and shipped products directly to customers in Texas. *Id.* at 791. A direct sale fulfillment to a well-known Texas address requires the defendant's willing participation. *Id.* at 792. Plaintiff's claims arise from and are related to Defendant's contact with Texas; the courts found no compelling case of undue burden; Texas has an interest in injuries to Texans from products shipped into Texas; Plaintiffs ' systemic interests did not point elsewhere. *Id.* 793-95.

Specific jurisdiction exists only when a defendant purposefully directs activities toward the forum and the plaintiff's claims arise from those forum-related contacts, and the exacting standard is not met by out-of-state conduct that bears no deliberate connection to the forum or the alleged injury. 724 F.Supp.3d 615. The plaintiff, NavSav Holdings, LLC, is a Texas-based company that sued former employees for allegedly soliciting its agents and clients in violation of

14

a non-solicitation and confidentiality agreement. *Id.* at 621-22. In *NavSav*, none of the individual defendants reside in Texas; they live and work in Nebraska or other nearby states, and their alleged conduct primarily occurred outside Texas. *Id.* at 626. NavSav raised the "cloud" argument in an attempt to establish specific personal jurisdiction. *Id.* at 627. The plaintiffs do not allege that Unico accessed confidential information, that Unico directed Individual Defendants to access and take NavSav's confidential information, or that Unico used that allegedly misappropriated information in any way. *Id.* The courts held that even if this were contacts, electronically accessing information that happens to be located on a Texas server is not purposeful availment and could not exercise specific personal jurisdiction over the defendants. *Id.* The court reasoned that the defendant's employment action took place entirely in Nebraska, the court stressed that hiring people in Nebraska to work there cannot show that Unico purposefully availed itself of Texas. *Id.* The court further explained that the existence of contracts between the individual defendants and NavSav is not a contract between Unico and Texas. *Id.* Unico's alleged tortious interference seemingly occurred in and was purposefully directed toward Nebraska, not Texas. *Id.* Even though Unico has some contacts with Texas, namely selling a small amount of property and casualty insurance to Texans, these contacts did not relate to the underlying suit. *Id.*

The circumstances here mirror the jurisdictional deficiencies identified in *Final Expense*, where the Court dismissed the action for lack of specific personal jurisdiction. In *Final Expense*, a Texas company sued Florida residents, claiming breach of contract and failure to indemnify. The plaintiffs argued that specific jurisdiction existed because the defendants had Texas insurance licenses, contracted with a Texas business, and made telephone calls to Texas residents. Yet the court rejected those arguments, understanding that the alleged forum contacts

did not give rise to or relate to the asserted claims. The lawsuit was based on the defendant's refusal to indemnify, which occurred outside Texas; therefore, no forum-related nexus existed. The court concluded that extended jurisdiction under those facts would offend due process because the connection between the defendants, the forum, and the litigation was to attenuated. The same reasoning applies here with even greater force. The Plaintiffs' sole alleged contact, a May 2, 2024, photograph of a Facebook post, occurred at the Defendant domicile in UT, months before the asserted '247 patent issued, and entirely outside of MS. As a matter of law, pre-issuance conduct cannot give rise to infringement, as Plaintiffs had no enforceable patent rights on May 2, 2024. So, there is no causal link between any alleged act and the forum state. Like the defendants in *Final Expense*, Defendant maintained no activities or operations in the forum, and the alleged conduct was not purposefully directed toward MS. The connection between MS and this dispute exists only because Plaintiffs chose to file here, not because the Defendant's conduct created any minimum contact related to the claim. In both cases, the defendants' limited and tangential ties to the forum did not establish the necessary "arising out of or relating to" nexus that specific jurisdiction demands. In *Final Expense*, merely doing some business with a Texas company was insufficient; here, a single, pre-issuance online Facebook post made from UT provides even less jurisdictional substance. Consequently, exercising specific jurisdiction in MS would contravene due process by asserting powers over a defendant whose alleged action neither occurred in nor was directed at the state. It would violate the notion of fair play and substantial justice.

In *Georgiou*, the Connecticut Corporation purposefully availed itself of the Texas market by running a moderating interactive e-commerce website that allowed Texas consumers to place orders, make payments, and have products shipped directly to their Texas homes. The defendant

generated thousands of dollars in Texas sales, and the plaintiff purchased and used the product in Texas, and the injury occurred in Texas. Those facts satisfied all three prongs of the Fifth Circuit's specific jurisdiction test: purposeful availment, nexus ("arising out of or related to"), and fairness. Unlike *Georgiou's* commercial website, the defendant's alleged contact with Mississippi is a single pre-issuance conduct on a Facebook post from May 2, 2024 made from his residence in UT. This Facebook post existed in a small private group with minimal engagement, gathering (4) comments, (15) reactions, and was expressly limited to May 2024. It contained no checkout link, no payment portal, and no MS-specific targeting. Under the *Zippo* sliding scale, that likely put the Facebook post at the passive end, equivalent to "simply conveying information." This passive social media post does not constitute purposeful availment because it lacks interactivity. Thus, whereas the defendant in *Georgiou* deliberately held itself out as willing to sell to residents nationwide and internationally, here the defendant did not do so, and neither offered nor consummated any MS transaction. In *Georgiou*, the claim arose directly from the defendant's Texas-directed conduct; a battery was sold, shipped, used, and exploded in Texas. Here, the alleged act, the May 2, 2024 Facebook post, occurred while the defendant lived in UT, months before the '247 patent issued on July 16, 2024. Because infringement cannot occur before issuance, no claim for infringement could have arisen from the conduct as a matter of law. Nor is there any evidence that the post targeted or reached MS customers, generated sales, or caused forum-related injury. The relationship among the defendant, the forum, and the litigation, which *Georgiou* found compelling, is entirely absent here. The *Georgiou* court found the jurisdiction fair because the seller had made numerous sales to Texas residents, including the plaintiff, and could reasonably anticipate defending itself there. In contrast, asserting jurisdiction over the defendant in this case based on one passive, pre-issuance Facebook post made from UT

would offend "traditional notions of fair play and substantial justice." MS's interest is minimal; no witness or evidence is located there, and litigation there would impose an undue burden on an out-of-state individual. The defendant's case involves a single passive post, no MS targeting, and no infringing act at the time. The alleged contact is neither purposeful, forum-directed, nor causally linked to any infringement claim; specific personal jurisdiction fails at every prong.

Like the defendants in *NavSav*, whose alleged conduct was entirely centered in Nebraska and not purposefully directed toward Texas, the Defendant's alleged actions here are confined wholly outside of MS and lack any deliberate forum connection. In *NavSav*, a Nebraska company that hired employees, executed contracts, and allegedly interfered with business relationships in Nebraska, was not subject to Texas jurisdiction because the alleged action occurred in and was purposefully directed toward Nebraska, not Texas. So too here, the only contact alleged is a single, pre-issuance Facebook post originating from UT, not MS. The post was published within a private Facebook group consisting of a small number of members, drawing only (4) comments and (15) reactions. Unlike the defendants in *NavSav*, who at least maintained limited unrelated Texas sales, the defendant has not had any activities or operations directed toward MS residents. A post made in a private online community, with minimal interaction and no targeting of MS users, is far more attenuated than the conduct deemed insufficient in *NavSav*. Moreover, even if the court were to credit Plaintiff's theory that this social-media post on May 2, 2024 constitutes commercial conduct, it predates the issuance of the '247 patent and therefore cannot "arise out of or relate to " any alleged infringement as a matter of law. Because the photograph and discussion occurred expressly before any enforceable patent right existed, they are legally incapable of giving rise to an infringement claim. Thus, there is no causal nexus between the defendant's pre-issuance post and any post-issuance right to exclude,

as the enforcement term did not begin until July 16, 2024. Because no conduct was purposefully directed toward MS, and because infringement liability only attaches after issuance, the pre-issuance Facebook post cannot give rise to the cause of action. It therefore cannot supply the "arising out of" nexus required for specific jurisdiction. The exercise of specific jurisdiction here would offend traditional notions of fair play and substantial justice.

Even if minimal contacts existed, exercising jurisdiction here would offend traditional notions of fair play and substantial justice. MS has no legitimate interest in adjudicating a dispute involving a UT resident for an alleged act occurring entirely in UT before any patent right existed. The UT contact is a private Facebook post, which occurred before the issuance of the '247 patent and has no nexus to the alleged infringement. Such infringement could not legally exist on May 2, 2024, because the '247 patent was not issued, and its enforceable term had not begun until July 16, 2024. (The Facebook post was expressly limited to May 2024. See Exhibit 1, Plt. Comp. 5:22) The Defendant could not reasonably foresee being haled into a MS court on those facts.

### B. Plaintiff Failed to Properly Serve Defendant (Rule 12(b)(4), and 12(b)(5))

### 1. Plaintiffs' September 21, 2025, Service Attempt Was Invalid, and They Now Bear the Burden of Demonstrating Compliance with Rule 4.

The plaintiff bears the burden once service of process is challenged, as their method of service is improper and does not comply strictly with Rule 4. Delivery is not synonymous with service and invalidated a default judgment because the plaintiff failed to complete service in strict compliance with Rule 4. *Carimi,* 959 F.2d. 1347-48. Fed. R. Civ. P. 4(h) Requires service on "an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process." *Maschinenfabrik Reinhausen GmbH.,* 2007 WL 9711692 (N.D. Tex. Mar. 31, 2007).

Plaintiffs cannot rely on partial or defective attempts at service of process to establish valid service as the court requires strict compliance with Rule 4. *Carimi*, 959 F.2d. 1347-48. In *Carimi*, the mailing of the summons, complaint, and acknowledgement form did not strictly conform to Rule 4. The Fifth Circuit reversed the district court, holding that service was not valid because service within compliance with Rule 4 was not satisfied. *Id* at 1347-49. The *Carimi* court established that when the service of process is contested, the plaintiff bears the burden of proving its validity. *Id.* at 1346. The court explained that Carimi could not recharacterize a failed service attempt as valid under Louisiana's long arm statute or another rule. Further reasoning that strict compliance with Rule 4 is required to establish jurisdiction, and fairness dictates that the defendant should not be "sandbagged" by defective service that appears valid but is not. *Id.* at 1347-48

Strict compliance with Rule 4 is required; serving an unauthorized employee at a conference, even if the defendant has actual notice, does not constitute valid service of process. *Maschinenfabrik*, 2007 WL 9711692 at 2. In *Maschinenfabrik,* the plaintiffs attempted service by handing the summons and complaint to a project manager from Huaming while he was attending a conference in Dallas, Texas. *Id* at 1. The project manager was not an officer, managing or general agent, or authorized agent for Huaming under Rule 4(h) or Texas Law. *Id* at 2. Plaintiffs argued that the project manager said he was "in charge" and that Huaming had actual notice. *Id* at 2. The court held that service of process was improper because it was made on the project manager, who was not an officer, managing or general agent, or authorized agent under Rule 4(h) or Texas Law, and accordingly the case was dismissed without prejudice under Rule 12(b)(5) for insufficient service of process. *Id.* The court reasoned that strict compliance with Federal Rules and Texas law, and clearly delineating how service should be effected upon a corporation, was

required, and plaintiffs failed to follow those requirements. *Id.* The court rejected Plaintiff's argument that Huaming's actual notice of the suit cured defective service, reiterating that actual knowledge of a lawsuit by a defendant is insufficient to confer jurisdiction. *Id.* The court emphasized that service rules are not "technical" hurdles to be disregarded; they must be complied with strictly. *Id.*

In *Carimi*, the plaintiff attempted to serve the defendant by mail. Although the summons and acknowledgment form were delivered, the acknowledgment was never signed and returned. The Fifth Circuit held that "delivery is not synonymous with service" and that Rule 4's requirements must be strictly followed to establish jurisdiction. Because the plaintiff failed to complete the necessary steps, service was invalid, and the default judgment was void. The same principle applies here. Plaintiffs left what they identified as "papers" on the steps of a property the defendant owns but was not occupying at the time, just as in *Carimi*, where incomplete mail service was legally ineffective despite delivery. Leaving papers at a property where no one was presently occupying cannot constitute valid service. Rule 4 requires either personal delivery, delivery at the defendant's actual residence to a person of suitable age and discretion living there, or delivery to an authorized agent. None of those requirements was satisfied. Furthermore, in *Carimi*, the court emphasized that the burden rests with the plaintiff to prove valid service once it is challenged. Here, Plaintiffs cannot carry that burden because their own return service document proves service to be invalid on its face, showing that in-person service was not made on the defendant, nor substitute service of a co-resident, or upon an authorized agent. To hold otherwise would expand Rule 4 beyond its text and allow plaintiffs to "sandbag" the defendant with jurisdiction based on nothing more than leaving papers at an empty house. Thus, just as in *Carimi*, service here was fatally defective. Delivery service to a property that the defendant owns

but was unoccupied at the time, then laying "papers" outside of a property, is not legally sufficient service under Rule 4, leaving the plaintiff's service fatally defective.

In *Maschinenfabrik Reinhausen*, the court dismissed the action because the plaintiff attempted to serve process on a project manager at a trade conference, who was not an officer, managing agent, or authorized agent for the corporation. The court emphasized that strict compliance with Rule 4 is required and that "actual knowledge of a lawsuit by a defendant is insufficient to confer jurisdiction." The same defect arises here. Just as service on a project manager at a temporary conference could not bind the foreign corporation, leaving papers at the Defendants' unoccupied property cannot constitute valid service under Rule 4. Just as the court in *Maschinenfabrik* rejected the plaintiff's argument that actual notice cured defective service, the plaintiff here cannot argue that the defendants' later awareness of the lawsuit validates an invalid method of service. Thus, both cases stand for the principle that strict compliance with Rule 4 is mandatory, and service on an unauthorized person or in an unauthorized manner is void, even if the defendant ultimately learns of the suit.

## 1. Plaintiffs' September 21, 2025 Executed Return Service is Facially Invalid.

Plaintiffs executed return service is facially defective, invalid, and misleading. In-person service by physical delivery was never affected, and the service is improper. Under Fed. R. Civ. P. 4(e)(2)(A), service must be accomplished by "delivering a copy of the summons and complaint to the individual personally...." Miss. R. Civ. P. 4(d)(1) contains the same requirement.

Here, Plaintiffs file an executed returned service on 09/22/2025 as if to candidly inform the court that proper in-person service was rendered under strict compliance with Rule 4. However, their filing contradicts itself on its face in several respects, "the undersigned duly

served… in the above mentioned action JESSE T. KLINE, by then and there, at the residence and usual place of abode of said person(s), personally delivering 1 true and correct copy(ies) of the above document into the hands of and leaving with JESSE T. KLINE." (See Exhibit 10)

The process server then outlined in a statement given under the penalty of perjury evidence of the contrary impeaching his own affidavit, "JESSE T. KLINE; Server arrived at the target location and observed the same truck as before backed into the driveway. Server rang the intercom and an adult male occupant came over the intercom. Server stated that he had papers for JESSE KLINE. The occupant stated that "he does not live here anymore". Server stated "that's fine Mr. Kline, I am just going to leave these papers right here for you". Server placed the documents on the ground on the door mat. The occupant then switched his tact and level of understanding regarding the engagement, as he then stated "I'll be suing you soon". Video recording obtained." (See *Id.*) The process server claims that this intercom exchange occurred with an occupant, but no living person was present on the property. The Plaintiffs' bad actor rendered improper service the day before the 4m period was originally due to expire, highlighting their lack of due diligence and lack of good cause, as they are willing to forgo strict compliance with Rule 4. Therefore, it would not be possible for the Plaintiffs' process server to render in-person service in this manner and then lay what he called "papers" at the steps of an unoccupied property, as service of process in this manner is invalid.

Courts typically require strict compliance with Fed. R. Civ. P. 4(e)(2)(A), service must be accomplished by "delivering a copy of the summons and complaint to the individual personally…", and personal service would have to conform with those methods allowed by Rule 4. Not a drop service at an unoccupied property where the process server knows there was no live or identifiable person is in proximity, and not by illegally trespassing and affixing a GPS

tracking device in the late hours of the night to a would-be litigant's family member's vehicle in an attempt to secretly surveil their family's private movements, who is not a party to this case. At no time did Defendant personally receive these documents. No co-resident of suitable age and discretion accepted the documents. No authorized agent was served. Plaintiffs' process server left what he called "papers" on the doormat of an unoccupied home without effecting proper service and indicated nothing to apprise anyone of notice that litigation is pending against them.

In addition to improper service, the "process" itself is defective. The individual purported to serve the Defendant never identified the "papers" as a summons or complaint, never stated that anyone was being served, and left what he called "papers" unattended on the doorstep of an unoccupied property. Further, the item left at the unoccupied property appears to be Walgreens' photos, as the only identifiable features are those displayed in the text "Find *smiles* inside, Walgreens' Photos." (See Exhibit 9.1-9.2) It remains unclear whether the "papers" left were even a valid summons issued by the Clerk of Court as required under Rule 4. Accordingly, both the process and the service were insufficient, depriving this court of personal jurisdiction. Therefore, Plaintiffs' process and service are wholly defective on its face; the complaint should be dismissed, or in the alternative, the court should quash service of process, finding process and service as improper under Rule 4.

### 2. Plaintiffs' Conduct Shows Lack of Due Diligence and has No Good Cause.

Plaintiffs' conduct while attempting to effect service highlights unlawful acts and cannot be considered acts of "Due Diligence" or showing of "Good Cause." Rule 4(m) requires dismissal without prejudice if service is not made within the 4m period, unless the plaintiff shows "good cause," in which case the court must extend time. *Lambert v. United States*, 44 F.3d 296 (5th Cir. 1995).

Under Rule 4(m), "good cause" to extend the service deadline requires at least excusable neglect plus a showing of diligence and reasonable basis for the delay; mere inadvertence, ignorance of the rules, does not constitute good cause. *Lambert v. United States*, 44 F.3d 296 (5th Cir. 1995). In *Lambert*, simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice. *Id.* at 299. The *Lambert* court required "some showing of good faith ... and some reasonable basis for noncompliance within the time specified is normally required." *Id.* The Fifth Circuit affirmed dismissal; Lambert's second FTCA suit was time-barred, and he could not rely on equitable tolling because Rule 4(m) already provided a remedy. *Id.* at ¶ 4, 5. The court explained that dismissal of the first suit without prejudice left Lambert "in the same position as if the first suit had never been filed." *Id.* at 297. Rule 4(m) allowed him to avoid dismissal by showing "good cause" for late service, but he failed to do so because the Rules provided an express remedy, and equitable tolling was unavailable. *Id.* at ¶ 4, 5.

Courts strictly enforce Rule 4's service requirements; they will extend time where the plaintiff shows both good cause and due diligence, but not for simple neglect, mistake, or ignorance of the rules. *Ganpat v. Eastern Pacific Shipping, PTE. LTD.*, 434 F. Supp. 3d 441 (E.D. La. 2020). In *Ganpat*, the Plaintiff served Captain Owen Bona aboard the M/V Banda Sea on December 15, 2018, while the vessel was anchored in the Mississippi River. *Id* at 447. The Plaintiff argued Bona was either an employee or "managing agent" of Eastern Pacific, making service valid under Rule 4(h). *Id.* at 449. The court held that service on Captain Bona was not valid under Rule 4(h), because he was not Eastern Pacific's officer, managing agent, or authorized agent. *Id.* at 454–58. Despite the improper service, the court extended the time under Rule 4(m) since the plaintiff demonstrated good cause. *Id.* at 461–62. The court explained that service was defective because the Plaintiff failed to prove Eastern Pacific transacted business in

Louisiana or that Captain Bona qualified as its agent; therefore, service was legally insufficient. *Id.* at 452–58. The court further reasoned that, once challenged, the plaintiff bore the burden to show service validity by a preponderance of the evidence and failed to do so. *Id.* at 448. The Court found good cause because the plaintiff served Bona under a reasonable (though mistaken) belief he was connected to Eastern Pacific. *Id.* at 461–62.

Just as in *Lambert*, where the plaintiff's failure to properly serve within Rule 4's deadline barred his claim, Plaintiffs here cannot stretch "good cause" to cover their defective service. The Fifth Circuit held that "simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice" and that good cause requires diligence and a reasonable basis for delay. Plaintiffs here did the opposite: instead of diligently following Rule 4(e), their agent left what he called "papers" on the steps of an unoccupied property, a method the Rule plainly forbids. Worse still, the same individual engaged in unlawful misconduct by trespassing onto Defendant's property in the late hours of the night and attaching a GPS tracking device to Defendant's family member's vehicle. Such tactics reflect a disregard for lawful process, rather than due diligence or good cause. Thus, these acts should consider dismissal appropriate, since they lack the Fifth Circuit's meaning of "due diligence," or quash service as it was improper, since the Plaintiffs are acting in bad faith.

In *Ganpat*, the court ultimately found "good cause" to extend the plaintiff's time for service because the defect stemmed from a plausible but mistaken belief that the captain of a vessel was an employee or managing agent authorized to accept service. The plaintiff in *Ganpat* actively litigated and demonstrated diligence throughout the Rule 4(m) period. The failure was not due to abandonment or gamesmanship, but rather to a reasonable, if incorrect, interpretation of service law. By contrast, the service in the Defendant's case bears none of those mitigating

26

features. Here, the plaintiff's process server did not attempt to personally serve the defendant, nor serve a co-resident of suitable age and discretion under Rule 4(e)(2)(B). Instead, he merely dropped "papers" on the steps of an unoccupied property, a property where neither the defendant nor any other person was present at the time. That act was not a "plausible" attempt to comply with Rule 4, but a facially invalid and careless method of service on the expiration of the plaintiff's initial 4m period.

The court is clear in *Ganpat* that "[i]n the absence of valid service of process, proceedings against a party are void." Unlike *Ganpat*, there is no good-faith mistake here that might warrant a Rule 4(m) extension. Instead, the plaintiff's conduct shows a lack of diligence and respect for Rule 4's requirements. The GPS incident illustrates the plaintiff's improper tactics: using a defective "service" to rush this suit forward and previously engaging in surveillance and intrusion to bolster the plaintiff's claims. That conduct undermines any assertion of good cause and due diligence. Thus, where *Ganpat* involved a diligent but mistaken litigant entitled to extension, the Defendant's case involves a careless and bad-faith attempt at service that is void as a matter of law. Good cause does not apply, and dismissal under Rule 12(b)(5) is required, or the court should quash the plaintiff's executed return service, as the plaintiffs are acting in bad faith.

## IV. Conclusion

Defendant has no personal contacts with Mississippi, and the only alleged conduct occurred in UT before the plaintiffs' patent right existed. The Court therefore lacks personal jurisdiction. Additionally, Plaintiff's process and service were procedurally and legally invalid. For these reasons, Defendant respectfully requests that the Court grant his Special Appearance

Motion to Dismiss under Rules 12(b)(2), 12(b)(4), and 12(b)(5), or quash any attempted service and grant such further relief as the Court deems just and proper.

Respectfully submitted this 14 day of October, 2025.

Jesse T. Kline, Defendant Pro Se
Special Appearance Only
P.O. Box 106
Mendota, IL 61342
Email: jkline05191986@proton.me
Telephone: (385) 341-5369